Court, please call the next case. 1092579, Wendy Walsh v. The Community Compensation Commission Good morning, Justices of the Senate and the opposing counsel. I'm only working on half the battery. Last night, they didn't agree with me. You have to keep your voice up. That's what I'm talking about. I didn't sleep, but I'm fine to do this. Just for clarification. What about your brief? Did it follow Supreme Court Rule 341? To my knowledge, it did. Pardon me? To my knowledge, it did. To your knowledge? You did it, didn't you? Yes, I did. In your brief, in the factual history, did you state the facts that were necessary to understand the case? Yes, I did. Or did you simply argue? I have a statement of facts in my brief, and then I have an argument, and then I file a reply brief. It's a separate part for statement of facts. And this is an unusual case because the arbitrator found the petitioner unable to testify, in this case due to her medical condition. But the facts are based from medical records, depositions. It's an unusual case. I've never had one where a petitioner was so ill, the arbitrator found her so ill she could not testify. There was no testimony of the petitioner. Counsel, can you start off by telling us, clarifying, what is this semantization disorder that your client is apparently suffering from? She had multiple pre-existing conditions. She was 25 years old, and she got hit in the head with a kickball on 2-21-1993. Then she had shoulder surgery. She's a certified Illinois school teacher. She graduated from Elmhurst College in 1990, worked as a certified teacher during that time. And there is no testimony about that because she didn't testify, Your Honor. What I'm taking in my argument, facts is from the records, because the petitioner did not testify due to her. The arbitrator found her too ill. She had seizure disorders. She couldn't complete the rectum cross. And that's why there's no testimony. It's all from the records. Well, maybe from the records, but records have facts. Right. And facts need to be presented, and they should be accurate, which maybe that's not what I'm calling a question. I don't think this court is. But fairly without argument or comment. And I think the question is, this, which you call factual recitation, is replete with follow-up argument. And that's what Rule 341 does not permit. And I suggest you review it when you practice before this court. I shall. But to answer the question, I took this appeal because the arbitrator, based on the records and depositions, the opposing counsel did not partake in any of that. He just wrote the brief, sir. So what the commission, and to answer your question, what is the somatization disorder, she had a preexisting condition of that. She had fibromyalgia, a related matter. And she worked through two auto accidents prior to 2-21-1993. She went to the hospital when she was hit in the head, 2-21-1993. She had shoulder surgery due to the auto accident in March of 1993. May 21st of 1993, she was hit in the head while attending on the playground and hit in the head again. That was her last day of work in 13 years. So she was hit in the head twice with a kickball. You know we have these accidents. What is your understanding of what this term means? What is the definition? What does it mean? It's a psychological term, psychiatric term for when a person seeks medical help for problems they have. It's cited very, by this court, in the Waldorf case, which is cited in my, where there's a fibromyalgia, which is a medical term intertwined with the psychological component. And what's upsetting is that the commission's decision, taking away a permanent total, that the arbitrator wrote, with all the facts, including Dr. Blonsky, they wrote that Dr. Sweet never gave an opinion about owning this report, but we took his deposition. Dr. Sweet testified that the second kickball pushed this woman over the edge and she needed counseling. She could not work thereafter. The commission ignores that. They just go on and report. Then they say she has no neurological, no deficit, and no orthopedic injury. That's related to the kickball injury. What did she say in her deposition in the Lake County case? About what, Your Honor? What else did she say, a part of it anyway, that her condition did not improve after the January 1992 accident? Right. And they hired her in 1992. They rehired her. And she took a pre-employment physical in September of 1992. And she related her problems in the pre-employment physical. The school board was aware of what she had. They hired her with those factors from the previous auto accidents. And Dr. Gonzalez found her permanently and totally disabled in the deposition in the trial court, in his own deposition, prior to a third auto accident. The commission then says that we're going to take away the permanent total disability and we're going to award this lady 40-year-old man and 70-plus weeks of TTD because she had another auto accident and she needed further treatment. Well, how do you get to be a permanent total while you're treating doctors, Mayo Clinic doctors, you're a treating neuropsychologist, and you declared that before it comes out that you have a third accident. Well, if you already declared permanent and total, what this commission appears to be saying, well, you had another accident that made you more permanently and totally, therefore, we're going to take away the initial. I think what they held was that it was clear that the claimant was not totally and permanently disabled following the May 1993 accident. Just to clarify my understanding, it appeared to me from reading the record, the claimant's treating physicians, Mayo Clinic, including Dr. Volansky, all agree she has a somatization disorder. That means there's no known organic or physical basis they can find. Is that correct? That's correct. That's what that means. They also agree that the somatization disorder was preexisting at the time of the kickball, the two kickball accidents. Is that correct? That's correct. So we have varying opinions as to whether the claimant's condition following the May 1993 accident would forever preclude her from working. So that's what the commission based it on. So why is that wrong? Because two reasons. The medical doctor, pain management Dr. Gonzalez, who treated her from 1992, said she was permanently and totally disabled prior to the last auto accident. Dr. Sweet said she needed counseling, and the May 21st, 1993 accident put her over the edge. The commission, the trial court, the brief does not address those issues. What did Volansky say? Volansky said she needed psychiatric care and that nothing's related to anything. And that's not unusual for Dr. Volansky to say that. I put that in my brief because he does 150 IMEs a year. What financial interests does Mayo Clinic have? What does Dr. Sweet, who saw her on a consultation, what does Dr. Gonzalez? This is all ignored by the commission, their findings. But the arbitrator includes them, incorporates them in a four- or five-page written decision. But the commission ignores all of it. So does the trial court. You're talking about a commission that's composed of Pinkett, DeMuno, and Lindsey? Pinkett apparently wrote the decision. I have the decision in front of me, and she's the first signature. But I don't, you know, all I'm saying is what's in this decision is not addressed. It does not address the evidence of record. And it's not addressed by respondent's brief or the trial court. The trial court searches for an answer with Dr. Volansky. They don't go into fibromyalgia. They stay away from it. But it's an intertwined semanization that Mayo found. They said she needs a pain clinic. This is a woman that Dr. Sweet said. There is no 25-year-old person with a licensed teaching certificate that just stops working and goes on Medicare. And that's in his deposition. Nobody pays any attention to that. It says the report of the commission has not even established what their testimony is. And that's part of the facts that I put in. Well, do you think Dr. Volansky is significant to your case? You would have to think that, right? If he was significant to the case, the commission should have mentioned it. If he was significant to the case, why would they award 40 of a man in 70 weeks if Dr. Volansky said nothing was wrong or related in this case? And it was in 1994 when Dr. Volansky swore. So it's sort of a dichotomy. Right. If we listen to Dr. Volansky, how do we award 40 of a man and award 70 weeks of compensation and not mention his name in their decision? Well, is there evidence that she could not work prior to this 1994 car accident? There is direct evidence by Dr. Gonzales in September of 94. It is in either court testimony or in his deposition that said he declared her permanently and totally disabled. Why didn't Gonzales testify that just before the accident her condition had started to improve? I don't know if that was – that may have been a psychologist that they didn't use, but because she has a medical and psych wrapped up condition as in the Waldorf case, it's hard to go from saying one doctor's specialist in psychiatry or psychology says this without addressing the medical component, which is the non-organic fibromyalgia condition, which is ever more present. Well, you seem to be all over the place, but the real crux of the issue is for this tribunal to decide is the decision against a manifest weight. Can you tell us, in summary and succinctly, focusing only on that issue, forget about all these preexisting accidents, complaints, why is the commission's decision against the manifest weight of the evidence? That's the issue. That's why you're here. The commission's decision does not address her two main diagnoses, her somatoform disorder, which they say she has, but they ignore the fibromyalgia. Those in combination, and they work together to make her disabled based on the testimony of Dr. Gonzales and based on Dr. Sweet, a neuropsychologist, who puts her over the edge. And even Dr. Blonsky says she needs psychiatric care. Was there some indication that she might have been malingering? I asked that exact question to Dr. Sweet in his deposition. I said, do you believe she's a malingerer? He said no. And it's even in his report also, Your Honor. Is he the only one that said anything about it? Yes. Mayo Clinic, she saw three or four specialists at Mayo Clinic of all sorts. None of them said she was a malingerer. What did the Minnesota report show? The Minnesota report basically says she had a somatization disorder and she has non-organic problems and she needs pain management. Did it in that report suggest that she ought to be looked at, evaluated for signs of malingering? I can't recall if it did, but three or four doctors saw her, and most of them recommended pain management. She was fired by her employer on June 16th of 1993. She had no benefits. She got on Social Security SSI in 1995, and that's when Dr. Wilner, the subsequent treater, a neurologist, and part psychiatrist, treated her and found the same findings all the way to the date of hearing in 2006 before the arbitration. She did get a substantial recovery, but you want her to get the lifetime recovery. Is that correct? I'm going based on what the doctors did and what the doctors say, the evidence of record. Well, if you're going to go by what they said, how do you explain the Mayo report that said there's some indication she's malingering? How do you get around that? Well, I look at three or four of the Mayo Clinic doctors. If anyone said it was only one doctor, the three other doctors who saw her, they diagnosed somatization disorder and they diagnosed fibromyalgia or pain, they called it. She had non-organic pain syndrome, which they ordered a pain management. And if they thought that she was malingering, I can't see these doctors ordering pain management. Counsel, your time is up. You have time on rebuttal. Counsel, please. May it please the Court, Counsel Rick Kimnock on behalf of School District No. 82, and we stand by the record and on our brief. Thank you. The Court will take the matter under advisement for this position.